IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC J. LAWRENCE | : | 4:08-cv-2066 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICER MARK MATTERN | : | Hon. John E. Jones III |
| and LAUREN CARNEY | : | |
| | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

### **February 12, 2010**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before this Court is a Motion for Summary Judgment filed by Defendant, Officer Mark Mattern ("Mattern") on September 1, 2009. (Doc. 26). For the reasons that follow, the Motion shall be granted.

**I. PROCEDURAL HISTORY:**

Plaintiff Eric Lawrence (Mr. Lawrence) initiated the instant action by lodging a Complaint against Officer Mark Mattern ("Mattern" or "Defendant") and Lauren Carney ("Carney") (collectively, the "Defendants") on November 13, 2008 alleging deprivations of their First and Fourth Amendment rights in violation of 28 U.S.C. § 1983. On September 1, 2009, Mattern filed a Motion for Summary Judgment along

1

with a Statement of Undisputed Material Facts. On or about September 4, 2009, the Plaintiff's claims against Carney were discontinued and ended. (Doc. 23). On September 16, 2009, Mattern filed a Brief in Support of the September 1, 2009 Motion. (Doc. 25). On September 17, 2009, Mattern amended the September 1, 2009 Motion by filing the instant Motion. (Doc. 26). Subsequently, Mr. Lawrence filed a Counterstatement of Material Facts and a Brief in Opposition to the Motion. (Docs. 35, 36). Having been fully briefed, the Motion is ready for disposition.

## II. STANDARD OF REVIEW:

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving

party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

### III. STATEMENT OF MATERIAL FACTS:

On November 8, 2006, Judge Kleinfelter of the Court of Common Pleas of Dauphin County entered a Temporary Protection from Abuse Order (The "PFA") naming as Plaintiff Mrs. Lawrence on behalf of her minor children, Genesis Bordner and Joshua Bordner. (Doc. 21-2 p. 7). The PFA provided that the said minors were shielded from any abuse or harassment by Mr. Lawrence. (*Id.*). On November 17, 2006, a hearing on the merits took place. Although Mr. Lawrence was not present, he was represented by Attorney Erb. (Doc. 1 ¶ 14). An order of the Court was entered on November 17, 2006 memorializing certain agreements reached at the hearing. (Doc. 21-2) (the "Order").

According to the Order, Mrs. Lawrence was granted exclusive possession of the marital residence as of November 20, 2006. (*Id.* ¶ 2). In addition, the Order provided that if Mr. Lawrence desired any article of personal property from the home, "he must make that request through his attorney," who shall in turn communicate with Mrs. Lawrence's attorney. (*Id.* ¶ 3).

On November 17, 2006, subsequent to the Hearing, Mr. Lawrence returned to

4

the marital residence and discovered that Mrs. Lawrence had taken a number of things that did not belong to her. (Doc. 1 ¶ 16). He then called Attorney Erb, who made a list of these items. (Doc. 1 ¶ 16). Later that day, Mr. Lawrence received a call from Attorney Erb who, per the instructions of Mrs. Lawrence's attorney, told him to contact Mrs. Lawrence at Carney's house, the place she was residing. (*Id.* ¶ 17). Consequently, Mr. Lawrence phoned the residence of Carney looking to speak with Mrs. Lawrence. (*Id.* ¶ 19). Carney answered the phone and told Plaintiff that he was not allowed to call the residence per the PFA. Mr. Lawrence explained that he was under the impression that the PFA had been dropped and that he had permission to call Mrs. Lawrence.[1] (*Id.* ¶ 20).

Carney phoned the police to inform them of her belief that Mr. Lawrence had violated the PFA. Mattern responded to the call and investigated the scene at the scene of the Carney residence. (Doc. 21-2 p. 84). At that time, Carney and Mrs. Lawrence told Mattern that they believed the PFA had been violated. Carney asked Mattern to look at her home telephone to confirm that Mr. Lawrence's number was present on the caller ID system. (Doc. 21-2 p. 111). Mattern looked at the PFA, both physically and through the Commonwealth Law Enforcement System

---

[1] Mr. Lawrence contends that at the time of the phone call, the PFA was void and had, in any event, been issued in favor of the children. Furthermore, during the phone call, Mr. Lawrence told Carney that he had permission to speak with Mrs. Lawrence. (Doc. 35 ¶ 14).

Assistance Network (CLEAN), and confirmed that it was still in effect. Accordingly, Mattern filed a complaint and incident report requesting a warrant for the PFA violation. After the warrant was signed, Mattern arrested Mr. Lawrence at his residence. Following this incident, it was determined that there was no basis for arresting Mr. Lawrence and the charges were withdrawn. (Doc. 35-2 pp. 4, 36). Both the District Attorney and the victim/witness program confirmed that the PFA applied only to Genesis and Joshua Bordner and not to Mrs. Lawrence herself. (Doc. 35-2 p. 5).

After the charges against Mr. Lawrence were withdrawn, the instant action was instituted seeking recovery for First Amendment violations, false arrest, and malicious prosecution.

## IV. DISCUSSION

### A. First Amendment Claim

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. AMEND I. A plaintiff seeking to recover under a First Amendment retaliation claim must show that (i) he engaged in a protected activity; (ii) that the defendants responded

6

with retaliation; and (iii) that the protected activity was the cause of the retaliation. *Creveling v. Columbia County*, 2008 WL 1826907 *5 (M.D. Pa. 2008).

At the outset, we note that when an officer arrests an individual for which he reasonably believed he had a valid arrest warrant, First Amendment rights are not implicated. *See Creveling,* 2008 WL 1826907 *5. Here, Plaintiff has not provided us with any evidence indicating Mattern acted for any reason other than to effectuate what he thought was a valid arrest warrant. Although ultimately Mattern was found to be mistaken in his belief that Plaintiff had violated the PFA, there is no indication that the arrest was motivated by any desire other than to bring the Plaintiff to justice. The record evidence is completely bereft of any indication that Mattern harbored an ulterior motive or desire to retaliate against Plaintiff. Accordingly, it is our determination that the First Amendment claim brought by Plaintiff should be dismissed.

### B.     Fourteenth Amendment Claim

Insofar as Defendant is moving for summary judgment based on an independent Fourteenth Amendment Claim made by Plaintiff, Plaintiff has stated, to the contrary, that he makes no such claim. (Doc. 36 p. 7). Accordingly, we properly construe Plaintiff's invocation of the Fourteenth Amendment as a tool for making the protections of the Bill of Rights applicable to the states. *See*, *Duncan v.*

*Louisiana*, 391 U.S. 145 (1968). Consequently, there is no independent Fourteenth Amendment claim that needs to be resolved by this Court.

### C. False Arrest and Malicious Prosecution Claims

At the outset, we note that, the tort of false arrest and detention is available when a person has been confined without legal process; however, if a person has been arrested pursuant to a warrant, his remedy is to sue for malicious prosecution, as the essence of this tort is the perversion of proper legal procedures. *Burt v. Ferrese,* 871 F.2d 14, 16 (3d Cir. 1989). With this distinction in mind, we address these claims in sequence.

A plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (i) that the police officer "*knowingly and deliberately*, or with a *reckless disregard* for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (ii) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* (emphasis added). It is important to note that, an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest. *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000); *see also Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

We focus our attention on the first prong to determine whether any

8

reasonable jury could find that Mattern knowingly and deliberately, or with reckless disregard for the truth, represented in the warrant application that the PFA was in effect and applied to Mr. Lawrence. *See Russo*, 212 F.3d at 786. In making this determination, we note that "negligence or innocent mistake is insufficient." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Quite simply, Plaintiff has not adduced any evidence indicating that Mattern's conduct constituted anything more than negligence or innocent mistake. A reasonable jury could not conclude anything more than that Mattern, working quickly and erring on the side of caution, simply misread the PFA. While this may have been negligent, it is well to note that officers are trained to move quickly in these cases, as domestic violence incidents can play out with alarming alacrity. Moreover, in this Court's experience, most PFAs contain the estranged spouse as a party in her own right, so Mattern's misreading and assumption that she was a protectant here was not unreasonable.[2] Given the exigencies that attend domestic violence calls, we decline to hold Defendant to the standard of perfection that Plaintiff seeks to have us impose. While the arrest of Plaintiff was unfortunate and no doubt embarrassing, it is well to remember that it did not take place in a vacuum. A series of events preceded it that

---

[2] We also observe that the minor children who were the subject of the PFA evidently remained in Mrs. Lawrence's custody, which further complicated Defendant's attempt to interpret and act on the PFA.

9

triggered a PFA in favor of Plaintiff's children, which indicates that at least in part, he himself set the stage for the regrettable sequence giving rise to this case. Accordingly, we will grant the instant Motion to the extent it addresses Plaintiff's false arrest claim.

With regard to Plaintiff's Fourth Amendment malicious prosecution claim, he must show that: (i) the Defendant initiated criminal proceedings against him; (ii) the criminal proceedings terminated in his favor; (iii) the Defendant initiated the proceeding without probable cause; (iv) *the Defendants acted maliciously or for a purpose other than bringing the Plaintiff to justice*;[3] and (v) the Plaintiff suffered deprivation of liberty consistent with the concept of "seizure" as a result of the legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added).

As previously discussed, there is nothing in the record to indicate that Mattern's conduct constituted anything other than a negligent mistake. Therefore, Plaintiff has failed to carry his burden of adducing evidence from which malice or an ulterior motive can be inferred. Consequently, Plaintiff cannot satisfy the fourth prong of the Fourth Amendment malicious prosecution analysis. Accordingly, we

---

[3] The analysis of the probable cause determination is based on the objective facts available to the officers at the time of the arrest. *Lynn v. Cristner,* 183 Fed. Appx. 180, 183-84 (3d Cir. 2006).

will grant the instant Motion to this extent.

For the foregoing reasons, we shall grant the instant Motion in its entirety.[4]

An appropriate Order shall enter.

---

[4] We need not address Defendant's qualified immunity argument because we have already dismissed Plaintiff's claims on other grounds.